IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO ABORDO ESPINOSA, | No. C 06-4287 MJJ |
| Petitioner, | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| v. | |
| BOB HOREL, Warden, | |
| Respondent. | |

Before the Court is Petitioner Ernesto Abordo Espinosa's ("Petitioner" or "Espinosa") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Docket No. 1.) Petitioner is currently incarcerated at the California State Prison, Solano, in Vacaville, California. The Court ordered Respondent to show cause as to why the Petition should not be granted on the basis of Petitioner's cognizable claims. Respondent filed an answer accompanied by a memorandum and exhibits contending that the Petition should be denied. Petitioner timely filed a traverse. The matter is submitted. For the following reasons, the Court **DENIES** Petitioner's writ of habeas corpus.

**FACTUAL BACKGROUND**

This matter concerns Petitioner's conviction for the second degree murder of his wife, Carmen Silayan ("Silayan"). The following facts are set forth in the California Court of Appeal's opinion and are undisputed by both parties. (*See* Resp.'s Exh. C.)

## I. The Shooting

In the early morning hours of October 1, 1999, a Daly City Police Department dispatcher received a 911 call from Espinosa. Espinosa told the dispatcher, "I just shot my wife" and that she had "been bugging" him. When asked whether he shot his wife on accident or on purpose, Espinosa replied, "I lost it." He said he "lost count" of how many times he shot her, and explained his wife had been "nagging" him the whole month.

After paramedics and the police arrived at Espinosa's apartment, they found Silayan's deceased body, and two guns-a .38 caliber five-shot revolver on the couch with five empty cartridges, and a fully-loaded .45 caliber semi-automatic pistol under the pillow in the bedroom. They also seized two videotapes belonging to Espinosa entitled "Deadly Effects: What Bullets Do to Bodies" and "How to Shoot Fast and Accurate." At the police station, Espinosa gave a videotaped statement in which he admitted shooting his wife.

During the hours before the shooting, Espinosa's downstairs neighbor, Cathy Scott ("Scott"), heard arguing and scuffling from above. She heard two loud booms, and then Silayan saying loudly, "Why don't you just kill me. Go ahead and kill me, Ernie." Scott described Silayan's tone of voice as resigned, "like I give up." Scott then heard another four to six booms, which she then recognized as gunshots. Silence followed, and the police arrived about 30 minutes later.

Scott testified that, during the latter part of 1999, she heard Espinosa and Silayan arguing three or four times a week. Silayan told Scott she was having marital problems because Espinosa was having an affair with Silayan's niece.

## II. The Autopsy

The doctor who performed the autopsy on Silayan's body concluded the cause of death was five gunshot wounds to the chest and abdomen. Four of the entrance wounds were to the back, and one was in the area of the right breast. One of the wounds exhibited stippling, indicating the shot was fired within a couple of feet from the body. The entrance wound to the chest indicated "shoring" at the exit point, suggesting Silayan's body had been against a hard surface such as the floor when the bullet entered it. Silayan's arms also had some bruises which were consistent with

2

1  "defense wounds," i.e., those sustained when a person being attacked attempts to ward off the blows.
2  The doctor did not find any chronic injuries indicative of previous physical abuse.

### III. Expert Testimony

A weapons expert called by the prosecution testified that with the recoil from firing the gun used, Espinosa would have had to re-position and re-aim the gun after each shot in order to fire another round.  The expert also testified that firing four or five bullets with this gun into even a nearby person would require concentration and effort.

The defense called a crime scene reconstruction expert who gave his opinion that the "logical progression" of the five gunshots was as follows: first a shot to the front, followed by a shot to the side, and finally three shots to Silayan's back as she turned and fell rapidly.  He believed Silayan was face down on the floor when at least one of the shots was fired.  His opinion was that all of the shots could have been fired within four to five seconds of each other.

### IV. Espinosa's Testimony

Espinosa, 53 years old at the time of trial, married Silayan in 1991.  They both worked at a hospital where he was a computer technician and she was a nursing assistant.  Before that job, Espinosa had been a security officer and was certified to carry a firearm.  He described himself as a gun enthusiast and said he purchased videos on shooting to broaden his knowledge.

In January of 1999, Silayan went to the Philippines to bury her mother.  When she returned, Espinosa noticed "a complete transformation."  Silayan began to accuse Espinosa of having an affair with Silayan's niece, which both he and the niece denied. Silayan tried to check up on Espinosa by showing up at his work and hiding in his car.  Several times she woke him up in the middle of the night to confront him about the affair.  She threatened to call the police and tell them that Espinosa had hit her.  During a tirade about the affair, Silayan threw the telephone at Espinosa.

About three hours before Silayan's death, she started accusing Espinosa again.  She flicked the lights of their home on and off; she and Espinosa swore at each other.  Espinosa described her accusations during this episode as "excessive" and more frequent than usual.

Espinosa urged Silayan to settle down, but she went into the bedroom and returned with two guns, the .45 and the .38. Espinosa testified he kept these guns for self-defense. Espinosa asked her to put the guns back, but she set them on the couch where Espinosa was sitting. Espinosa returned them to the bedroom. Silayan screamed at Espinosa to bring the guns back, and said he did not have the guts to shoot her. She said she was going to call the police and report he had hit her, which Espinosa testified was not true. Silayan again got the .38 and waived it at Espinosa. She said, "Why don't you kill me now?" and shouted he did not "have the balls" to shoot her. Silayan put the gun on Espinosa's thigh. Espinosa was enraged. He stood up and started firing. He heard Silayan whimper after he fired the first shot. While he fired, Silayan, who had been facing him, stepped back, turned around and fell down. He kept firing, pulling the trigger even after he had spent all the bullets in the gun. He fired all of the shots consecutively and in a matter of seconds.

Espinosa testified Silayan's taunting caused him finally to lose it. Espinosa said he shot her because he "just wanted her to stop." His shooting was "like an eruption." When Espinosa realized what he had done, he called 911.

Espinosa said he never struck Silayan before 1999. He said he slapped Silayan in April of 1999 after she charged him, jumped him, scratched him, and kicked him. In July of 1999, Silayan and Espinosa shoved each other, and then he dialed 911 because he thought she was "going out of control again." According to Espinosa, both of these incidents began because Espinosa was trying to leave the house and get away from Silayan's "incessant accusations."

## V.   Trial

Petitioner at all times pleaded not guilty and the case went to trial. The jury found Petitioner guilty of the second degree murder of Silayan and found that Petitioner had discharged a firearm within the meaning of California Penal Code § 12022.53(d). On May 2, 2003, the San Mateo County Superior Court ("State Trial Court") sentenced Petitioner to 40 years to life in state prison. (Reporter's Transcript ("RT")[1] at 711-12.)

## PROCEDURAL BACKGROUND

---

[1] "RT" refers to the Reporter's Transcript of Petitioner's direct appeal, SC047151A. Copies of the transcript of Petitioner's trial were filed with the Court as Respondent's Exhibit B.

4

1  Following the trial in this matter, Petitioner filed a notice of appeal.  (RT at 716.)  On April
2  25, 2005, the California Court of Appeal affirmed Petitioner's conviction in an unpublished
3  decision.  (Resp.'s Exh. C at 1.)  On July 13, 2005 the California Supreme Court denied Petitioner's
4  petition for review.  (Resp.'s Exh. D, E.)  Petitioner has exhausted his state remedies as to the
5  claims herein presented and the petition is timely.  *See* 28 U.S.C. § 2244(d).

## LEGAL STANDARD

7  This Court will entertain a petition for writ of habeas corpus "[o]n behalf of a person in
8  custody pursuant to the judgment of a State court only on the ground that he is in custody in
9  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).
10 However, this Court may not grant a petition with respect to any claim that was adjudicated on the
11 merits in state court unless the state court's adjudication of the claim "resulted in a decision that was
12 contrary to, or involved an unreasonable application of, clearly established Federal law, as
13 determined by the Supreme Court of the United States[.]"  *Id.* § 2254(d)(1).

14  The "contrary to" and "unreasonable application"clauses of § 2254(d)(1) have independent
15 meaning.  *Williams v. Taylor*, 529 U.S. 362, 407 (2000).  A state court's decision is contrary to
16 federal law if it "failed to apply the correct controlling authority from the Supreme Court."  *Avila v.*
17 *Galaza*, 297 F.3d 911, 918 (9th Cir. 2001) (quoting *Shackleford v. Hubbard,* 234 F.3d 1072, 1077
18 (2000); *see also Williams*, 529 U.S. at 405–07; *LaJoie v. Thompson*, 217 F.3d 663, 667–68 (9th Cir.
19 2000).  If a state court directly contravenes a Supreme Court decision on a question of law, or if it
20 reaches a conclusion that contradicts a Supreme Court decision with materially indistinguishable
21 facts, it is contrary to federal law.  *Williams*, 529 U.S. at 413.

22  A federal court making the "unreasonable application" inquiry in a habeas case should ask
23 whether the state court's application of clearly established federal law was "objectively
24 unreasonable."  *Id.* at 409.  The "objectively unreasonable" standard does not equate to "clear error"
25 because "[t]hese two standards . . . are not the same.  The gloss of clear error fails to give proper
26 deference to state courts by conflating error (even clear error) with unreasonableness."  *Lockyer v.*
27 *Andrade*, 538 U.S. 63, 75 (2003) (citation omitted).  This standard of review, however, does not
28 relieve a federal court from its duty to examine and analyze the state court's application of federal

5

1  law.

2  In determining whether the state court's decision is contrary to, or involved an unreasonable
3  application of, clearly established federal law, a federal court looks to the decision of the highest
4  state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie*, 217 F.3d at
5  669 n. 7. If constitutional error is found, habeas relief is warranted only if the error had a
6  "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*,
7  532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

## DISCUSSION

Petitioner asserts two claims as grounds for habeas relief: (1) that the admission of testimony pertaining to his prior acts of domestic violence violated his due process rights under the Fifth and Fourteenth Amendments; and (2) that the admission of Silayan's out of court statements violated *Crawford* and Petitioner's right to cross examine witnesses. The California Court of Appeal held that: (1) the admission of evidence of prior acts of domestic violence did not violate Petitioner's due process rights and; (2) the error in admitting Silayan's hearsay statement into evidence was harmless beyond a reasonable doubt. The California Supreme Court denied Petitioner's petition for review. This Court must now determine whether the Court of Appeal's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law and whether any such error had a substantial and injurious effect or influence in determining the jury's verdict.

### I.  Petitioner's Due Process Rights

Petitioner contends that the State Trial Court violated his due process rights by admitting evidence of his prior acts of domestic violence pursuant to California Evidence Code § 1109 ("§ 1109"). (Pet.'s Writ at 3.) Petitioner argues both that § 1109 is contrary to federal law and that the State Trial Court unreasonably applied § 1109 to his case. The Court takes each argument in turn.

#### A.  California Evidence Code § 1109 is Not Contrary To Federal Law.

Petitioner's facial challenge to § 1109 requires the Court to determine if the state courts' adjudication of the issue was contrary to federal law. In this analysis, a federal habeas court may grant the writ only if the provision violates federal law, either by infringing upon a specific federal

6

constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

As a general rule, California Evidence Code § 1101 ("§ 1101") contains a broad proscription against the admission of evidence of a person's character or conduct to prove a defendant's general criminal disposition to commit a charged crime.[2] However, under § 1109, the prosecution may, in any "criminal action in which the defendant is accused of an offense involving domestic violence," introduce evidence of the defendant's commission of other acts of domestic violence.[3] Admission of this evidence is subject to the court's discretion to exclude it, pursuant to California Evidence Code § 352 ("§ 352"), if the probative value of the evidence is "substantially outweighed" by the risk of prejudice, an undue consumption of time, confusion of the issues or misleading the jury.[4]

At the outset, the Court notes that neither the United States Supreme Court nor the Ninth Circuit have ruled on whether § 1109 violates due process. In fact, federal circuit courts have held that similar federal evidentiary rules, Federal Rules of Evidence 413 and 414 ("FRE 413 and 414" respectively) do not offend due process. Under FRE 413 and 414, evidence of the defendant's "commission of another offense or offenses" of sexual assault or child molestation is admissible, and "may be considered for its bearing on any matter which is relevant." Fed. R. of Evid. §§ 413, 414.[5]

---

[2] Cal. Evid. Code § 1101(a) provides: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

[3] Cal. Evid. Code § 1109(a)(1) provides, in relevant part, that, subject to exceptions, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

[4] Cal. Evid. Code § 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[5] FRE 413 provides, in relevant part, "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."

FRE 414 provides, in relevant part, "[i]n a criminal case in which the defendant is accused of an offense of child

7

1  The Ninth Circuit has held that FRE 414 is constitutional and does not violate due process because,
2  inter alia, the prejudicial versus probative balancing of Federal Rule of Evidence 403 ("FRE 403")
3  "safeguards the right to a fair trial."[6] *United States v. LeMay,* 260 F.3d 1018, 1026, 1031 (9th Cir.
4  2001). Other circuits have come to similar conclusions regarding FRE 413 and 414. *See United*
5  *States v. Enjady,* 134 F.3d 1427, 1433 (10th Cir. 1998) (rejecting due process challenge to FRE
6  413); *United States v. Castillo,* 140 F.3d 874, 883 (10th Cir. 1998) (rejecting due process challenge
7  to FRE 414); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (same). These holdings are
8  relevant here given the similarity between the exceptions set forth in § 1109 and FRE 413 and 414,
9  and the balancing required under both California Evidence Code § 352 and FRE 403.

10  In addition, the analysis annunciated in the federal cases discussed above is echoed by the
11  California Court of Appeal when repeatedly upholding § 1109 against due process attacks. *See e.g.,*
12  *People v. Escobar*, 82 Cal. App. 4th 1085, 1093-96 (2000) (rejecting a due process challenge to §
13  1109); *People v. Brown,* 77 Cal. App. 4th 1324, 1331-34 (2000) (same). Like the Ninth Circuit in
14  *LeMay*, the California Court of Appeal has held that the trial courts' discretion to exclude evidence
15  if it is more prejudicial than probative, under § 352, provides a "safeguard [that] should ensure that
16  section 1109 does not violate the due process clause." *See Escobar*, 82 Cal. App. 4th at 1095; *see*
17  *also People v. Jennings,* 81 Cal. App. 4th 1301, 1310 (2000) (holding that § 1109 does not offend
18  due process so long as the court weighs the prejudicial effect of the evidence against its probative
19  value).

20  In sum, the state courts' rejection of Petitioner's facial attack on § 1109 was not contrary to
21  federal law. First, there is no federal law finding that § 1109, or an analogous federal provision,
22  violates due process. In addition, the federal circuit courts have upheld similar federal evidentiary
23  provisions. Furthermore, § 352, like FRE 403, provides a safeguard that protects against violations
24  of due process. Thus, the state courts' holding that § 1109 does not offend due process was not

---

26  molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and
27  may be considered for its bearing on any matter to which it is relevant."

28  [6] FRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

8

contrary to federal law.

### B. The State Court Did Not Unreasonably Apply § 1109.

Petitioner also argues that the state court unreasonably applied § 1109 when it admitted evidence of two prior incidents of domestic violence. (Pet. at 10.) Petitioner claims that the evidence of prior domestic violence incidents were prejudicial and had no relevance to the charges in the murder case apart from supporting the inference that Petitioner was by propensity a probable perpetrator of the crime. The Court disagrees.

The Supreme Court has held that a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer*, 538 U.S. at 75-76 (citations and quotations omitted). Here, Petitioner claims that the state courts failed to appropriately balance the prejudicial versus the probative nature of the evidence under § 352 and thus failed to properly safeguard Petitioner's due process rights. The Court therefore reviews the record to determine if the state courts' application of § 352 was objectively unreasonable.

The contested evidence includes two discrete acts of domestic violence between Petitioner and his wife. First, the State Trial Court admitted evidence that, on April 23, 1999, Officer Robert Hyink ("Hyink") spoke to Silayan at the Daly City Police Station. (RT at 720.) According to Hyink, Silayan told him that she had been involved in a verbal argument with Petitioner, and that he grabbed her by the throat. (RT at 721.) Hyink further testified that Silayan told him that she did not want the police to contact Petitioner, and that she was moving to the Philippines. (RT at 722-723.) Hyink noted no injuries on Silayan. (RT at 728.)

Second, the State Trial Court admitted evidence that, on July 17, 1999, Officer Harrison ("Harrison") responded to Petitioner and Silayan's apartment on a call of a domestic violence disturbance. (RT at 851-53.) Petitioner told Harrison that there had been a verbal argument, and that he had pushed Silayan once, and that she had pushed him as well. (RT at 856, 875.) Silayan refused to talk to Harrison, and after Harrison saw no signs of an altercation, he left the apartment. (RT at 854-57.) In his report, Harrison categorized the incident as a "mutual disturbance," and he

9

1  was unable to determine who was the suspect, who was the victim, or even if a crime had occurred.
2  (RT at 873, 891-92.) Harrison testified that the police department had a policy of aggressively
3  pursuing even minor domestic violence reports, because they could result in "very bad situations,"
4  including homicide. (RT at 902-03.)

5  Prior to the commencement of jury selection, the State Trial Court heard Petitioner's motion
6  *in limine* to exclude evidence of prior domestic violence committed by Petitioner against his wife.
7  (RT at 54-60.) The prosecutor sought to admit this evidence pursuant to § 1109. Petitioner objected
8  to admission of this evidence on the ground that it violated his federal constitutional right to due
9  process and a fair trial. (RT at 148.) The prosecution argued that this evidence was relevant to rebut
10 the defense's evidence that went to Silayan's state of mind, suggesting that she was provoked her
11 husband. Furthermore, the prosecution argued that this evidence demonstrated a pattern of domestic
12 violence. The State Trial Court ruled that evidence of the two incidents were admissible pursuant to
13 California Evidence Code §§ 1109, 1220 (hearsay exception for party admission), 1250, 1251
14 (hearsay exception for state of mind), and 1370 (hearsay exception for threats of physical injury).

15 The Court of Appeal analyzed the State Trial Court's admission of this evidence under § 352
16 to determine if, as Petitioner argued, it was more prejudicial than probative and should have been
17 excluded. Upon review, the Court of Appeal held that the State Trial Court did not abuse its
18 discretion in admitting this evidence. (Resp. Exh. C at 8.) The Court of Appeal first held that the
19 evidence was relevant because Petitioner put Silayan's state of mind at issue by arguing that
20 Silayan's incessant nagging about Petitioner's affair with her niece provoked Petitioner to shoot her.
21 Consequently, the Court of Appeal held that evidence of domestic violence before Silayan's death
22 was relevant to show that the shooting was a culmination of a pattern of fighting and abuse and did
23 not occur in the heat of passion.

24 The Court of Appeal further concluded that the incidents were not overly prejudicial and
25 were significantly less "egregious than the charged offense, and posed no danger of confusing the
26 jury." (Resp. Exh. C at 8.) The Court of Appeal noted that the incidents of domestic abuse
27 presented by the contested evidence were not shocking in their violence and in fact included some
28 evidence that there was both parties were at fault for the altercation. (*See id.*) Moreover, the Court

10

1  noted that the risk of prejudice was slight given that Petitioner testified regarding both incidents and
2  his recall of the facts were much as the police officer witness testified. (*See id.*) As the Court of
3  Appeal noted, Petitioner admitted, during his trial testimony, that the July 1999 incident of mutual
4  pushing occurred much as the police officer witness testified, and that he in fact was the one who
5  made the 911 call. Petitioner also admitted slapping Silayan during the April 1999 incident, and
6  explained that she had attacked him first.

7  Upon review, the Court finds that it was not unreasonable for the Court of Appeal to find that
8  the contested evidence was relevant. Nor was it unreasonable for the Court of Appeal to find that
9  the contested evidence was not overly prejudicial, given that Petitioner admitted to shooting his wife
10  in court and Petitioner admitted to the two prior domestic violence incidents. Thus, in light of the
11  totality of the evidence presented in this case, the weight of the challenged evidence was minor in
12  comparison to the other evidence and the potential prejudice resulting from admission of the prior
13  acts of domestic violence did not so outweigh the probative value of the evidence.

14  Therefore, the Court of Appeal's holding that the potential prejudice from the admitted
15  evidence did not substantially outweigh the probative value was not an unreasonable application of
16  law. Accordingly, habeas relief is not warranted on this claim.

17  **II.     Petitioner's Rights under *Crawford* and the Right to Cross Examine Witnesses**

18  Petitioner contends that the admission, at trial, of Officer Hyink's testimony regarding
19  Silayan's April 1999 domestic abuse report violated his constitutional rights under the Confrontation
20  Clause. (Pet. at 11.) When presented with this issue, the Court of Appeal held that the admission of
21  this testimonial hearsay evidence did violate the Confrontation Clause, but affirmed the State Trial
22  Court after holding that the error was harmless beyond a reasonable doubt. This Court reviews the
23  Court of Appeal's holding to determine if it was contrary to, or an unreasonable application of,
24  Supreme Court precedent.

25  **A.     The State Court's Application of Federal Law Was Neither Contrary To, Nor an
26            Unreasonable Application of, Federal Law.**

27  The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal
28  prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

11

1 U.S. Const. amend. VI.  The federal confrontation right applies to the states through the Fourteenth
2 Amendment.  *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).  After the trial in this case, the United
3 States Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2006), which held that the
4 Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at
5 trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross
6 examination."  541 U.S. at 53-54.  There are various formulations of what constitutes a testimonial
7 statement.  *Id.* at 51.  A definition relevant to this case, and one that qualifies under "any conceivable
8 definition of testimonial" is a "recorded statement, knowingly given in response to structured police
9 questioning" that "declarant[s]  would reasonably expect to be used prosecutorially."  *Id.*

10 On direct review, *Crawford* error is reviewed for harmless error.  *United States v. Nielsen*,
11 371 F.3d 574, 581 (9th Cir. 2004).  Under this standard "the court must be able to declare a belief
12 that it was harmless beyond a reasonable doubt."  *Chapman v. California*, 386 U.S. 18, 24 (1967).
13 While the *Chapman* standard remains applicable to criminal convictions challenged on direct appeal,
14 the Supreme Court has adopted a less strict standard for federal habeas corpus.  *See Brecht*, 507 U.S.
15 at 637-38.  A habeas petitioner is not entitled to relief unless the trial error "'had substantial and
16 injurious effect or influence in determining the jury's verdict.'"  *Id.* at 637 (quoting *Kotteakos v.
17 United States*, 328 U.S. 750, 776 (1946)).  In other words, state prisoners seeking federal habeas
18 relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas
19 relief unless the error resulted in "actual prejudice."  *Id.* (citation omitted).

20 If the state court disposed of a constitutional error as harmless under an appropriate standard
21 of review, federal courts must, for purposes of application of the "unreasonable application" clause
22 of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively
23 unreasonable.  *See Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir. 2004).  If the federal court
24 determines that the state court's harmless error analysis was objectively unreasonable, and thus an
25 unreasonable application of clearly established federal law, the federal court then proceeds to the
26 *Brecht* analysis.  *Id.* at 877.

27 Here, in a written motion filed prior to trial, Petitioner objected, on the basis of the
28 Confrontation Clause, to the admission of Officer Hyink's testimony that Silayan told him that

12

1 Petitioner pushed her and grabbed her by the neck on April 23, 1999.  (Pet. at 4.)  The State Trial

2 Court ruled that the hearsay statement of Silayan was admissible under California Evidence Code §§

3 1370 and 1109, and found that admission of the statement did not violate the Confrontation Clause.[7]

4 (*Id*.)  The State Trial Court then permitted Hyink to testify that Silayan told him that she had been

5 involved in a verbal argument with Petitioner, and that he grabbed her by the throat.  (RT at 21.)

6 Hyink further testified that Silayan told him the same day that she did not want the police to contact

7 Petitioner, and that she was moving to the Philippines.  (RT at 722-23.)

8      Upon review, the Court of Appeal found that Silayan's statement was testimonial under

9 *Crawford* because it was "knowingly given in response to structured police questioning" and a

10 declarant in her circumstances would have reasonably expected her statements to be "used

11 prosecutorially."  (Resp. Exh. C at 11 (*quoting Crawford*, 541 U.S. at 51).)  The Court of Appeal

12 further held that Petitioner had no opportunity to cross examine Silayan regarding her statement to

13 Officer Hyink before her death.  Therefore, the Court of Appeal found that admission of this

14 testimonial evidence was an error.  The Court of Appeal next analyzed the *Crawford* error under the

15 *Chapman* standard, and found that it was harmless beyond a reasonable doubt.  (Resp. Exh. C at 11-

16 13).

17      The Court finds, therefore, that the Court of Appeal applied the appropriate standard, the

18 *Chapman* standard, to determine that the error was harmless.  *See Nielsen*, 371 F.3d at 581

19 ("Confrontation Clause violations are subject to harmless error analysis, because 'the Constitution

20 entitles a criminal defendant to a fair trial, not a perfect one.'") (quoting *Delaware v. Van Arsdall*,

21 475 U.S. 673, 680-81 (1986)).  This Court, therefore, reviews the Court of Appeal's harmless error

22 analysis to determine if it was objectively unreasonable.  *See Medina*, 386 F.3d at 878.

23      The Court of Appeal held that the *Crawford* error was harmless because of the overwhelming

24 evidence of Petitioner's guilt.  Specifically, the Court of Appeal noted that:

25     [t]he only incriminating evidence that would have been excluded by not admitting

---

[7] Cal. Evid. Code § 1370 allows statements describing physical injury if all of the following conditions are met: (1) the statement purports to describe the infliction or threat of physical injury upon the declarant; (2) the declarant is unavailable as a witness; (3) the statement was made at or near the time of the infliction or threat of physical injury; (4) the statement was made under circumstances that would indicate its trustworthiness; and (5) the statement was made in writing or made to a law enforcement official (among other possibilities).  Cal. Evid. Code, § 1370(a).

13

> Officer Hyink's testimony was the statement that Espinosa had grabbed Silayan by her neck, with no apparent lasting injury to Silayan. Even without this testimony, the jury heard Espinosa's admissions that he slapped and pushed his wife in April and July 1999. One of Silayan's co-workers gave similar testimony - that Silayan had said Espinosa had slapped her hard enough to make her fall onto a nearby couch. Moreover, the evidence of domestic abuse cut both ways in this case - there was also evidence of Silayan scratching, kicking, and pushing Espinosa when he tried to get away from "incessant accusations," and evidence that Silayan's attacks on Espinosa precipitated his pushing and slapping her. Ultimately, Espinosa's counsel relied on this evidence during her closing argument to show this was a 'classic heat of passion' case where Espinosa shot Silayan because she provoked him with her 'obsessive' and 'crazy' behavior which included her physical attacks on him.

(Resp. Exh. C at 12.) In addition, the Court of Appeal noted that there was evidence, including Petitioner's own testimony, showing that Espinosa shot Silayan five times because Silayan had nagged and taunted him. (*Id.*) The Court of Appeal viewed this evidence as supporting the conclusion that the jury found a basis for their verdict of second degree murder independent of the admissions of evidence of prior acts of domestic violence challenged in this petition. (*Id.*) Furthermore, the Court of Appeal considered Petitioner's argument that reliance by the prosecutor in closing argument on erroneously admitted evidence supports a finding of *Chapman* prejudice. (*See id.*) The Court of Appeal found this argument unavailing because the prosecutor only referred to evidence of domestic abuse during his rebuttal and after defense counsel relied on this evidence in her closing argument to support a provocation theory. Finally, the Court of Appeal considered Petitioner's argument that the length of the jury deliberations suggested that the case was close. The Court of Appeal held that the jury did not ask for clarification about the specific evidence in question and, even if they jury thought the case was close, there is no indication the jury thought so because of the challenged domestic violence evidence.     In sum, therefore, the Court of Appeal held that the overwhelming evidence of Espinosa's guilt, aside from the improperly admitted statements, satisfied the *Crawford* test.

The analysis engaged in by the Court of Appeal was objectively reasonable. The Ninth Circuit has held that it was reasonable for the relevant California court to find that overwhelming evidence of guilt, even after the contested evidence was excluded, proved the error harmless beyond a reasonable doubt. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1061-62 (9th Cir. 2005). Similarly, here, the Court of Appeal engaged in an analysis of the evidence absent the constitutional error and found that there was overwhelming evidence of guilt. The Court of Appeal weighed the evidence in

14

1  the record and considered Petitioner's contentions.  Despite Petitioner's contention that Hyink's
2  statement formed the core of the prosecution's argument, the Court of Appeal offers the reasonable
3  conclusion that there was overwhelming evidence of Petitioner's guilt by way of his own testimony
4  and other evidence.

5  Petitioner argues, however, that the Court of Appeal erred in applying *Chapman* because it
6  asked "whether the jury would have concluded beyond a reasonable doubt that Espinosa was guilty
7  of second degree murder even without Officer Hyink's testimony." (*Id*. at 11.)  Petitioner argues
8  that this is the wrong application of *Chapman* given the Supreme Court's explanation that the
9  *Chapman* inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would
10 surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely
11 unattributable to the error."  *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1980).

12 On this point the Court finds that while the Court of Appeal may have imprecisely stated the
13 *Chapman* test, making it appear to be closer to the test rejected in *Sullivan*, the Court of Appeal's
14 application was not unreasonable.  The above-quoted language in *Sullivan* was written by the
15 Supreme Court in order to distinguish between the types of cases for which harmless review is
16 applicable, and those for which it is not.  *See id.* at 280.  Specifically, the Court cautioned against
17 making hypothetical determinations regarding whether the same verdict would have been rendered
18 when the verdict itself was premised on a constitutionally deficient reasonable-doubt instruction.
19 *See id.* at 277.  Here, however, there is no debate as to whether the harmless error standard applies,
20 thus the distinction drawn in *Sullivan* is inapplicable.  In addition, the Court of Appeal, when
21 applying the harmless error standard, engaged in an analysis of whether the jury would have reached
22 the same actual verdict beyond a reasonable doubt absent the constitutional error.  *See id.*  This is the
23 same standard that the Supreme Court annunciated in *Sullivan* when it explained that the proper
24 inquiry is whether "the jury's actual finding of guilty beyond a reasonable doubt would surely not
25 have been different absent the constitutional error."  *Id.* (emphasis omitted).

26 Therefore, there is nothing about the Court of Appeal's analysis that would lead this Court to
27 find that the analysis was objectively unreasonable.  Accordingly, habeas relief is not warranted on
28 this claim.

15

**B.     The Court Need Not Reach the Issue of Forfeiture of Confrontation Rights**.

Respondent argues that Espinosa forfeited his right to confront Silayan by killing her. As the *Crawford* court explained, "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds." *See Reynolds v. United States*, 98 U.S. 145, 158-59 (1879); *see also Davis v. Indiana*, 126 S.Ct. 2266, 2280 (2006). In *Reynolds*, the Supreme Court explained:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful act. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege.

*Reynolds* 98 U.S. at 158. "The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong; and, consequently, if there has not been, in legal contemplation, a wrong committed, the way has not been opened for the introduction of the testimony." *Id*. at 159.

The Court of Appeal determined that it did not need to reach this issue because of the conclusion, under *Chapman*, that the admission of the evidence in dispute did not mandate reversal. Similarly, this Court finds that it does not have to reach this issue because the Court of Appeal's harmless error analysis was not unreasonable.

**C.     Conclusion**

In light of the foregoing, the Court of Appeal's decision that any error by the State Trial Court was harmless beyond a reasonable doubt was not contrary to, or an unreasonable application of, federal law within the meaning of § 2254(d)(1). Accordingly, habeas relief is not warranted on this claim.

//
//
//
//
//

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** this petition for a writ of habeas. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

Dated: March 25, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE